[No. 2258.]

KELLOGG v. THE DENVER CITY TRAMWAY COMPANY.

1.  **Negligence—Master and Servant—Safe Appliances.**

    If a master has furnished his servant with proper machinery
    and appliances for the performance of the work required of the
    servant it is no part of the master's duty to see that the servant
    makes use of such machinery and appliances so furnished.

2.  **Same—Repairing.**

    Where a servant is employed to put a thing or place in a
    safe and suitable condition for use, it is not the master's duty
    to have such place or thing in safe condition and good repair
    for the purpose of such employment.

3. Same—Electric Railways—Linemen.

An electric railway company who employed a lineman whose duty it was to repair its poles and wires and to go upon the poles for the purpose of taking down and putting up wires did not owe to such employee the duty to inspect its poles and inform him whether or not any of them were so decayed as to be unsafe to work upon.

4. Same.

Plaintiff was employed by defendant, an electric railway company, as a lineman. Plaintiff had been engaged in the business of lineman and electric work several years and had been at work for defendant for three months. Plaintiff was supplied with proper appliances for bracing and strengthening poles which he might be required to climb. Held, that defendant was not liable for an injury to plaintiff caused by a pole which had rotted at the ground breaking and falling while plaintiff was upon it for the purpose of repairing the wires, and which plaintiff had neglected to brace or prop before going upon it.

*Appeal from the District Court of Arapahoe County.*

Mr. S. L. CARPENTER and Mr. JOHN T. BOTTOM, for appellant.

Mr. A. M. STEVENSON and Mr. CHARLES J. HUGHES, Jr., for appellee.

MAXWELL, J.

This was an action by the plaintiff to recover damages for the alleged negligence of the defendant's predecessor, The Denver Consolidated Tramway Company, which corporation by a consolidation with another corporation became the defendant herein. Trial to a jury. At the close of plaintiff's evidence defendant's motion to instruct the jury to return a verdict for the defendant was granted. Judgment was rendered in favor of defendant on the verdict, and plaintiff appeals.

Plaintiff was employed by defendant as a lineman, and was injured by the breaking and falling of a pole upon which he was working. Plaintiff testified that at the time of the accident he was twenty-

seven years old, had been working as a lineman for the company for about three months, and had been engaged in the business of lineman and electric work for about eight years. On the day when the accident occurred he was working with two other employees of the company, resetting poles, changing wires and placing back guys. That immediately preceding the accident he had ascended a pole and removed a wire therefrom; that this pole had been braced with two pike-poles, as Parker, who seemed to be in charge of the work, said it was rotten; that he was then ordered by Parker to splice the wire just removed from the pole and place it on the pole which subsequently broke. Plaintiff asked Parker if he intended to guy this pole, as there would be an added strain placed upon the pole. Parker replied that the pole had been tested the day before by digging down and testing it with a bar, and that it was perfectly sound. Plaintiff ascended the pole, which stood twenty-five or thirty feet above the ground, put the wire in position, put on a small block and tackle and commenced to pull up the slack, when the pole broke and carried plaintiff with it to the ground, seriously injuring him by the fall, and by bringing him in contact with live electric wires.

Plaintiff further testified that he was hired by Mr. Matthews; that Parker was the foreman, and worked with the linemen; that there were pike poles, grab hooks and other appliances for strengthening and bracing poles on the repair car at or near the place where the accident occurred. That the pole which broke was ten or twelve inches large at the top, and larger at the bottom; that it broke at the surface of the ground; that before he ascended the pole he made no examination whatever to determine whether the pole was safe or unsafe; that he did not know how old the pole was; that it appeared to be

like the other pole which was braced with pike poles; that in the performance of his duties he frequently had to climb poles, reset poles and wires, and remove decayed poles. Elliott, a witness for plaintiff, testified to substantially the same facts; that he made no examination of the pole; that dry rot at the surface of the ground caused it to break; that plaintiff did nothing to test the pole before climbing it except to place his hand upon it and push it. Two witnesses testified as to the nature, character and extent of the plaintiff's injuries. The foregoing is a fair summary of the evidence in the case.

In *Floyd v. Colo. Fuel and Iron Co., ante* 153, 70 Pac. 452, this court has said:

"Now when, for the purpose of the work required of his employees, the master has provided upon the premises and within their reach suitable implements and appliances in suitable condition he has, in such regard, discharged his full duty toward them; and he is not responsible for their neglect to employ the instruments he has provided. Having those instruments at hand, they take their own chances upon the consequences of failing to use them"—citing a number of cases.

In other words, if the master has discharged his duty in furnishing the servant with proper machinery and appliances for the performance of the work required, it is no part of his duty to see to it that the servant makes use of such machinery and appliances so furnished. The evidence in this case shows that there were on the repair car, which was at or near the place where the accident occurred and within reach of plaintiff, grab hooks, pike poles and other appliances for bracing and securing poles. The evidence also shows that just before the accident occurred a pole which plaintiff had ascended had been secured by means of these appliances. So that it

seems clear that under the authorities above cited there was no such negligence or lack of reasonable care upon the part of the defendant in furnishing proper machinery and appliances for the performance of the work as would make defendant liable in this case.

Nor can it be said that under the facts in this case the master was required to provide the servant with a safe place in which to perform the work. For where a servant is employed to put a thing or place in a safe and suitable condition for use it would be obviously unreasonable and inconsistent to require the master to have such place or thing in a safe condition and good repair for the purpose of such employment.

The controlling question in this case is whether the defendant owed to the plaintiff, whose business it was to work upon poles along the line as occasion might require, the duty to inspect its poles and inform the plaintiff whether or not any of them were so decayed as to be unsafe to work upon. The plaintiff had worked upon poles in the construction and repair of electric lines many years. When he engaged to work for the defendant he must have known that it would be his duty to go upon poles that had been set in the ground for an uncertain length of time. He must have known that such poles would decay and become unsafe for him to work upon. He must have known that the work of climbing poles and taking down and putting up wires would often put a strain upon a pole much greater than it would be exposed to in sustaining the wires when they were all in proper position. It must be conceded that in this case negligence was not established by mere proof of an accident. The burden was upon plaintiff to show that the defendant's neglect of some duty caused the accident. We are of the opinion that the

risk of falling on account of the weakness of old poles was a risk of the business which the plaintiff assumed by his contract to work as a lineman for the defendant; that as between the plaintiff and the defendant, the defendant was under no obligation to inspect the poles to see whether they were decayed and unsafe, and there was therefore no evidence of neligence on the part of the defendant.—*McIsaac v. Northampton Electric Co.*, 172 Mass. 89.

For the reasons above stated the judgment of the court below should be affirmed.

*Affirmed.*